IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TIERRA INTELECTUAL BORINQUEN, INC.<br>Plaintiff<br><br>Vs.<br><br>HTC CORPORATION et al<br>Defendants | CASE NO. 2:13-cv-39-JRG |
| TIERRA INTELECTUAL BORINQUEN, INC.<br>Plaintiff,<br><br>v.<br><br>TOSHIBA CORPORATION, et. al.,<br>Defendants | CASE NO. 2:13-cv-47-JRG |

## PLAINTIFF TIERRA INTELECTUAL BORINQUEN, INC.'S REPLY CLAIM CONSTRUCTION BRIEF

Plaintiff Tierra Intelectual Borinquen, Inc. ("TIB" or "Plaintiff") moves this Court for an order construing certain claim terms from the asserted claims of U.S. Patent 7,350,078 ('078 Patent), U.S. Patent 7,725,725 ('725 Patent) and U.S. Patent 8,429,415 ('415 Patent) (collectively, the "Asserted Patents") in accordance with its Reply Claim Construction Brief.

## I.       INTRODUCTION

Following the filing of TIB's Opening Claim Construction Brief, the Parties further agreed to construe three additional terms, leaving only the following terms up for construction: (1) Signal; (2) Signal Type; and (3) Measurable Variable Input. TIB's construction for the remaining terms continues to rely, first and foremost, on intrinsic evidence, rather than declarations of third parties. Likewise, TIB maintains that the specifications and claims should control the construction in this case.[1]

## II.      APPLICABLE LEGAL PRINCIPLE

The applicable law is clear in that the overriding legal principles relevant to claim construction follow that one should look at the claims language first, and the specifications that support the claims, without reading limitations from the specifications into the claims. See, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) ("[O]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims."); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (holding that "[i]t is

---

[1] Defendants presented a series of proposed construction in the Joint Claim Construction and Prehearing Statement (Dkt. No. 89), to which TIB relied upon when drafting its Opening Claim Construction Brief. Although the parties met and conferred over possible stipulations as to the remaining terms, TIB did not consent to the Defendants altering their remaining constructions. As the Court will note, Defendants have included wholly new constructions for the remaining terms without prior leave of Court.

well settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e. the patent itself, including the claims, the specification, and, if in evidence, the prosecution history.") (citations and quotations omitted). While extrinsic evidence may be considered, it may never be used to contradict a construction that clearly arises from the claims or the specification. S*ee Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) ("Extrinsic evidence may never be relied upon, however, to vary or contradict the clear meaning of terms in the claims.").

## III.    DISPUTED CLAIM TERMS[2]

Although the parties met and conferred to try to agree on the proper construction of the terms of the Asserted Patents, three terms currently remain in dispute. TIB respectfully submits that its proposed constructions should be adopted because they are based on the full scope of the intrinsic evidence.

### A.  "signal" / "signals"[3]

| TIB'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | DEFENDANTS' P.R. 4-3 CONSTRUCTION |
|---|---|---|
| "A set of [related software recognizable data] which results from user input onto the computer via an [input device]" | "A set of related software-recognizable data of the same type which results at the termination of a single user input into the computer via the input device" | **HTC:**<br>Plain and ordinary meaning<br><br>**Toshiba:**<br>"Set of [related software-recognizable data] of measureable variable input of the same type from a single |

---

[2] All citations to the specification of the '078 Patent also refer to the corresponding sections of the '725 and '415 Patents, unless noted otherwise.

[3] The term "signal" appears in the following asserted claims: '078 Patent, claims: 1, 2, 4; and '725 Patent, claims 1, 2, 9, 10, 11, 15, 16, 17, 19.

| **TIB'S CONSTRUCTION** | **DEFENDANTS' CONSTRUCTION** | **DEFENDANTS' P.R. 4-3 CONSTRUCTION** |
|---|---|---|
| | | transmission" |

As stated in TIB's brief, a signal: (1) is a set of related software-recognizable data; and (2) results from user input into the computer via one or more input devices. See Dkt. 93 at pp. 10.

Defendants contend that the claim language is clear in that a "signal" is a "set of software-related recognizable data of the same type…" See Dkt. 96 at pp. 9-10. As such, Defendants contend that TIB's proposed construction is improper because it ignores the plain language of the claims, which requires the related software-recognizable data be of the same type. *Id.* However, adding the "same type" limitation to the construction for "signal" would be redundant since the claims in the Asserted Patent already require that signals be of the same type. If the Court were to follow Defendants' construction it would only serve the purpose of confusing the jury. TIB respectfully submits that the "same type" language should not be added to the claim construction.

Furthermore, Defendants seek to add limitations to the term "signal" that find no support in the specification of the Asserted Patents. In particular, Defendants contend that a signal results at the termination of a single user input. Defendants reach this conclusion by relying on the following citation: "[a] transmission **1** is user input into the computer **100** via one or more input devices **106**, whereupon termination of transmission **1** is recognizable, and resulting in at least one signal **2**." *See* '078 Patent 3:16-19. However, as is evident from that language, the signal

does not necessarily result at the termination of single user input; rather the only requirement with respect to "termination" is that the termination of the transmission must be recognizable.

There is no condition in the specification of the Asserted Patents that the signal "results at the termination" and adding this limitation to "signal" is at odds with the specification. *See* '078 Patent 5:34-35 ("In one embodiment, account input **99** captures all transmission **1** signals **2** *until actively terminated* **78**.") (emphasis added). Thus, a signal does not have to occur only after termination as Defendants' proposed construction requires.

Thus, as shown by the specification, there can be a signal before termination occurs. A signal does not occur only after termination of the "transmission" as Defendants' construction requires. Therefore, TIB respectfully submits that the Court should reject Defendants' construction and adopt TIB's construction, which is supported by the full scope of the specification.

### B.   "measurable variable input"[4]

| TIB'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | DEFENDANTS' P.R. 4-3 CONSTRUCTION |
|---|---|---|
| "A quantity, property, or condition that is measurable from an [input device]" | **HTC:**<br>No construction is necessary<br><br>**Toshiba:**<br>"A variable quantity that can be measured, in contrast to a discrete quantity or condition that can be identified exactly" | **HTC:**<br>Plain and ordinary meaning<br><br>**Toshiba:**<br>"A continuous input that varies over time and can be measured." |

TIB contends that "measurable variable input" should be construed as "a quantity, property, or condition that is measurable from an input device." TIB's proposed construction is

---

[4] The term "measurable variable input" appears in the following asserted claims: '078 Patent, claims: 1, 9; and '725 Patent, claims: 1, 10, 15.

based on the intrinsic record. TIB respectfully submits that the proposed construction makes it easier for a juror to understand the Asserted Patents. In contrast, HTC takes on an overly simplistic approach and moves the Court to find that "measurable variable input" deserves no construction. .

Toshiba, in contrast, moves the Court to adopt a construction based on an overly complicated reading of the Asserted Patents. Toshiba's piecemeal approach confuses rather than clarifies fundamental aspects of the Asserted Patents and is at odds with the intrinsic evidence.[5] Therefore, adopting their proposed construction is an invitation to err.

While it is true that extrinsic evidence may be helpful in ascertaining the meaning of the claims, the Court should exercise caution in order to avoid the inherent flaws of extrinsic evidence. *See Phillips* at 415 F.3d at 1319 ("In exercising [the discretion to use extrinsic evidence], and in weighing all the evidence bearing on claim construction, the court should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly."). As stated in TIB's Opening Brief, Toshiba would have the Court adopt a technical construction that obviates the specifications in favor of extrinsic evidence. *See* Dkt. 93 at p. 12.

For instance, Toshiba relies on the relationship between the terms "identification" and "signature" to conclude that 1) an "account identifier" has to be a text transmission and 2) a transmission separate and apart from the text transmission of the account identifier is a "signature." In discussing the embodiment shown on Figures 9 and 10 and discussed in the Asserted Patents, Toshiba argues:

---

[5] Toshiba mischaracterizes the discussion provided by counsel for TIB during their meet and confer. TIB will not engage in a discussion over what was the actual response provided, save for the fact that counsel for Toshiba's summary is not accurate.

As illustrated in Figures 9 and 10 (reproduced below), and the accompanying text, **a user may assign an "account identifier**," including a "[t]ext transmission[] 1 that can be input in the text input dialog 41 comprising a text input control 42 and acknowledge button 43." Separate and apart from the text transmission of the account identifier, the "[s]ignature 4 transmission(s) 1 can be input, and input signals 2 recorded."

*See* Dkt. 96, p. 16 (emphasis added).

The specification of the Asserted Patents actually states that "FIGS. 9 & 10 depict an example account input **99** or post-account **109** creation submission **9** screen **40**, *employed to input at least a signature 4*." *See* '078 Patent 4:57-59 (emphasis added). It is apparent that Figures 9 and 10 are not concerned with account identifiers but rather with a submission screen employed to input signatures. As such, both the "text transmission" and the separate "signature transmission" in Figures 9 and 10 and its corresponding text in the specification are used to generate at least one signature. *See* '078 Patent 4:4-5 ("A plurality of transmissions 1 or signals 2 may be used for identification 3 or signature 4."). Therefore, while it is possible, within the specification of the Asserted Patents, to practice the invention in the manner described by Toshiba, using a "text transmission" for an "account identifier" is not required by the specification of the Asserted Patents. *See* '078 Patent 4:59-60 ("In one embodiment account identifiers 3 may be assigned").

Reading such limitations into the construction of "measurable variable input" is at odds with the specification of the Asserted Patents. For example, the specification discloses a certain type of signal that does not require a separate account identification. *See* '078 Patent 3:7-15 ("[I]n an alternate embodiment, a submission **9** comprises a single signature **4** *s*, as depicted in FIG. 4, supplanting separate identification **3** & signature **4** *a* while providing for the dual components of identification **3** and signature **4**. With submission **9** solely comprising signature **4**

*s*, an account may be identified by the signature **4** *s* data itself, or by having an account identifier **110** embedded within a key **6** that has been accessed during validation **18** of the signature **4** *s*.").

In fact, the specification is clear in differentiating between the type of signature that requires separate account identification and the type of signature that does not. *See* '078 Patent 6:28-35 ("As in the prior art, each account must be unique. For accounts where submission **9** comprises identification **3** and signature **4** *a*, identification **3** must be unique. For accounts where submission **9** comprises signature **4** *s*, the signature **4** *s* itself must be unique. During account creation **10**, this can be verified by attempting to validate **18** the appropriate component of a submission **9** for a new account prior to establishing the account **10**."). The example cited by Toshiba references "signatures" generally and does not specify whether an account identifier is necessary or not. Therefore, it must be inferred that the example relates to all types of signatures, including those that do not require an account identifier to be specified. Toshiba construes "measurable variable input" by contrasting "variable" quantities that can be measured with "discrete" quantities that can be "identified exactly." *See* Dkt. 96 at p. 11. This means that in order for Toshiba's construction to be useful, the jury must be able to understand what a "variable quantity" is, as opposed to a "discrete quantity." The jury would also be required to differentiate between "measuring" as opposed to "identifying exactly." Furthermore, Toshiba's construction does not recite where the "variable" or "discrete" quantities come from or why they differ between "variable" or "discrete." It is apparent that the constructions' intended audience would have to understand a highly technical aspect of the present invention. Thus, Toshiba's construction would confuse, rather than help the jury. As a result, Toshiba falls prey to the dangers of using extrinsic evidence by arguing an overly complicated position that does not find support in the specification of the Asserted Patents.

It should be noted that Toshiba relies on an expert declaration to conclude that only quantities can be measured and that digital input is suggestive of discrete input.[6] Moreover, they characterize properties and conditions as non-measurable variable input. However, their contention finds no support in the specification of the Asserted Patents. As stated in TIB's opening brief, the disclosure does not mention or require analog computers or analog input devices. Yet, Toshiba insists on adding limitations that are not found in the written instrument while relying on extrinsic evidence to distort the teachings of the Asserted Patents into a narrow construction that adds unnecessary an extraneous limitations. Therefore, adopting Toshiba's proposed construction is an invitation to err.

For these reasons, TIB respectfully submits that the Court should reject Defendants' constructions.

## C.  "signal type"[7]

| TIB'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | DEFENDANTS' P.R. 4-3 CONSTRUCTION |
|---|---|---|
| "A category of [measurable variable input] associated with at least one user-selectable [input device]" | "A category of measurable variable input associated with the signal received from at least one user-selectable input device" | **HTC ('415 patent only):** "A set of software-recognizable data of the same category of measurable variable input associated with at least one user-selectable input device." <br><br> **Toshiba (all patents):** |

---

[6] Further, despite providing his understanding that "variable" is used as an adjective and "input" as a noun Toshiba's expert makes no such statement with respect to "measurable."  See Dkt. No. 96-4, p. 6 nn. 1 and 2.  Nonetheless, by his statement that a person of ordinary skill in the art wound understand that "measurable" "means a "quantity that can be measured," Dkt. No. 96-4, p. 6, Toshiba's expert uses "measurable" as a noun, when by its form it is clearly an adjective.

[7] The term "signal type" appears in the following asserted claims: '078 Patent, claims: 1, 3, 9, 12, 15; '725 Patent, claims: 1, 7, 10, 11, 15, 16, 17; and '415 Patent, claims: 1, 12, 13, 14.

| TIB'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | DEFENDANTS' P.R. 4-3 CONSTRUCTION |
|---|---|---|
| | | "A type of [measurable variable input] associated with at least one user-selectable [input device]" |

As stated in TIB's brief a "signal type" is "a category of measurable variable input associated with at least one user-selectable input device." *See* Dkt. 96 at pp. 12-13. TIB's construction is essentially the exact language used in the claims of the Asserted Patents. During meet and confer, Defendants suggested that the construction of the term "signal type" should make clear that "signal type" is related to "signal" as opposed to "transmissions" and "transmissions types." To accomplish this, Defendants suggested adding the phrase "associated with the signal received from" to the construction proposed by TIB.

Defendant's objective in adding language not found in the claims is an attempt to clarify that the "signal type" is a "category of measurable variable input" that corresponds to a signal received from an input device. However, it is not clear from Defendants' proposed construction whether it is the "category" that is received or the "signal" that is received from the at least one user selectable input device. By not including the "the signal received from" language, TIB's construction stays focused on defining "signal type." It is TIB's contention that it is readily apparent that "signal type" is related to "signal" and that no clarification is required as it is unlikely that the jury will be confused by "signal type" and "transmission type".

IV.    <u>**CONCLUSION**</u>

For the reasons provided herein, the Court should adopt TIB's constructions because they are supported by the intrinsic evidence and reject Defendants' constructions because they are intended to further non-infringement and invalidity defenses by adding extraneous limitations, excluding disclosed embodiments, and violating other basic principles of claim construction.

Dated: April 15, 2014                    Respectfully Submitted,

By:
*Of Counsel*
<u>/s/Eugenio J. Torres-Oyola</u>
Eugenio J. Torres-Oyola
USDC No. 215505
**Ferraiuoli LLC**
221 Plaza, 5th Floor
221 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

William E. Davis, III
Texas State Bar No. 24047416
**The Davis Firm, PC**
111 West Tyler Street
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
Email: bdavis@bdavisfirm.com

**ATTORNEYS FOR PLAINTIFF TIERRA INTELECTUAL BORINQUEN, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this response was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(V).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 15th of April, 2014.

By: */s/ Eugenio J. Torres-Oyola*
Eugenio J. Torres-Oyola